Good morning. I'll attempt to reserve two minutes on the clock and I'll keep my eye on it. The primary issue, we have four, your honor, as you know, four issues in this case. The primary issue, I believe, is the variance, as that term is used by the sentencing court, to upward vary from a sentence of 70 months to 81 months, if the obstruction holds and is applied, the obstruction of justice, the two-point enhancement. If it doesn't, then the 57 to 71 months is applicable. So the court would vary between 8 and 11 on the vertical scale up to 140 months. So we're going from a range of 70 to 87 if the obstruction of justice enhancement holds or 57 to 71 months if the obstruction of justice enhancement fails. This is a severe departure upward or variance upward. And the idea behind all this was a guideline structure that the sentencing court indicated, the guideline was a suggestion, and I'm aware of a suggestion of 70 to 87 months. I'm aware of the cases that hold that the court can perhaps misconstrue or miscalculate or begin its sentencing structure by saying something like they're merely suggestions and then correct its course. Here the court did not correct its course. It went off into a guideline of under 2A.2.1 starting with a base offense level of 38. Now even under that structure, if the underlying facts did suggest that it was an attempted second-degree murder, the base offense level wouldn't be calculated under 2A.1.2 as the court did for 38 starting off at 38. It would be under 2A.2.1 which starts off with a base offense level of 33 if it is first-degree attempt or 27 if it's not. So we have a wide variation of the guideline structure in and of itself. However, the core of my argument is this, is that it's an abuse of discretion to miscalculate the guidelines. And I think that's what the court did. I believe the court did that. Now, if I may, I want to clarify something. So are you arguing that the court could not consider a hypothetical crime the attempted murder? Or are you arguing that if the court considered attempted murder, the court had to calculate the guidelines for that correctly which it didn't? I'm arguing both, Your Honor. I'm arguing first that under the abuse of discretion standard, the guidelines, the case law have taught us that the guidelines is a starting point. It's a benchmark. Counsel, you're almost down to six minutes. So could you tell me why you think the facts don't suggest attempted murder? I know that's one of your arguments, but I'm just... Certainly. In my briefing, I put in the jury instructions for second-degree attempted murder. And the court found that there was mortal intentions. However, in utilizing that in the jury instruction, you have to have a specific victim in mind. Did the government ever charge attempted murder? No. It did not. Does the government argue in its brief that the facts would have supported such a charge? No. So what's wrong, to get back to Judge Gould's question, with the court having assumed that hypothetical? And maybe I should ask a better question. Do you read the sentencing transcript to say that the judge did consider this to be an attempted second-degree murder? From what I read, yes. As opposed to engaging in the hypothetical. I mean, it's a little bit wobbly, so I just would like to hear your views on this point. Well, the judge indicated that there was no reason why somebody would possess a bomb and a firearm other than to kill a person. And so from that, I take, and I'm sorry if I didn't answer your question, Your Honor, but from that I take that the government or the sentencing court did find, with mortal intentions, that this man attempted a second-degree murder. I think the trial court said, I find, made a finding of mortal intentions. Is that right? That's a phrase, I think, straight from the transcript. That is correct, Your Honor. It's also in the, the mortal intention wording is also found in the findings in the judgment and sentence. And that is the problem with this, is there's no intended victim, first of all. There's also, there is, in a substantial, there's no substantial attempt. As an attempt, you have to take a substantial attempt. Here, the substantial attempt was a backward step. It's not a substantial step forward. Because the bomb was dismantled, is that what you mean? The bomb was dismantled. It was dismantled, according to the FBI. And so the pyrodex was taken out of it. There was no Christmas light attached to it, which was the igniter. So it was rendered indestructible at that point. So I've got another question for you. This issue of hypothetical crime is fascinating. And it does deserve some attention by our panel. So we'll let you go a little over your argument. But apart from the, or on that issue, I wanted to just pin down. My understanding is we don't have any Ninth Circuit authority that endorses, like precedential authority, that endorses a judge considering a hypothetical crime. But maybe I'm wrong in that. If you're aware that we do have it, you could let me know. Or if you're aware you don't, you could let me know. And second, I thought on that, that another circuit, maybe the Seventh, had endorsed that principle. Your Honor, I don't think the Ninth Circuit has a decision regarding a hypothetical calculation or a hypothetical crime, calculating a hypothetical crime. I think the closest thing that comes to this is the case that I submitted yesterday and provided Mr. Holmes is a garden hire. There, the court looked at an aircraft, a person who was pointing a beam at an aircraft. But was that the memorandum disposition or no? I believe it is, Your Honor. Let me ask you this question. What we're dealing with, basically, is how do you justify a significant upward variance from the sentencing guidelines? Whether it's 70 to 87 months or 50 to whatever, there's still a significant upward variance in this case, whichever way you slice it, correct? Correct. So I think we're dealing with, fundamentally, how and what does a judge do who wants to not depart variance, and what is the judge supposed to do in order to justify that? If, in fact, he did not use the hypothetical at all, but said, look, this guy's a bad egg, and he just trotted out all these reasons, and he came to the same 144 months, would there be anything wrong with that? Well, I think, Your Honor, under variance, the circumstances of the offense surrounding that, under 3553A. Consider the circumstances of the crime, his own personal characteristics. It's a 3553A calculus, right? And then he can just say, I just pick out a number, because considering all these factors, I think an upward variance is wanted in this particular case. What does the judge have to do to justify that? Well, I think it has to be not based on clearly erroneous facts. That would be a procedural mistake. That would be. If he said that I'm going to base my decision upon the fact that I make these findings, and if those findings are not supported by the record, then that would be a procedural mistake, right? Correct. But what if those findings are supported by the record? Does he have the discretion to say 144, 120, 180? I'm always concerned about whether there's an outer limit here that we reach when you talk about significant variances. I think Judge Alito, in United States v. Gaul, in his dissenting opinion, was very concerned about that. How far can you take a variance and put it into the context of a sentencing factor and then raise that factor significantly? If there's no mistake in terms of the findings of fact, here I think there are, by the way, but if there were none, then the judge seems to have complete discretion to go how high before you reach the point where something is substantively unreasonable. I find that to be kind of interesting and perplexing in the law. I do, as well, Your Honor, and I think something, I think, and that's why I say I find Gaul very interesting because of Judge Alito's dissent in that, and he was expressing the same concern. Where are you going to go with this? How far can you take this? But under 3553A, the sentencing judge is expressly allowed to consider the need to protect the public from future crimes of this defendant, and there's certainly evidence, I believe, in the record showing that the trial judge had good reason to think this defendant may have been contemplating a very serious crime. So even if you just consider that as a hypothetical, it would be helpful to me. If that were the case, hypothetically, what's your strongest authority for your position that this judge exceeded the limit of what he could do under 3553A? And I would go back to, again, Your Honor, the expressions under Gaul v. United States. The dissent. The dissent. Following up on Judge Christian's thoughts, do you know of any case, I haven't found any, where a court has reversed because it has determined that it is not substantively reasonable to have a significant variance? I know there are cases the opposite. I know Lynn Stewart, the terrorist lawyer in New York, that was reversed because it was considered to be too low, substantively unreasonable, because Judge Kodal's sentence was considered too low. But I don't know of any case that a court has said it's too high. I was wondering whether you know of any such case. Your Honor, I have reviewed such cases. I have not provided them in my briefing, I do not believe. But, again, I refer to this case, this most recent case decided April 30th, where I think the variance was not only was the guideline itself, the guideline used to calculate the sentence was questioned and rejected by the Ninth Circuit. Mr. Fisher, let me ask you to address a different issue. And, by the way, on that case you're talking about, you can tell me if I'm wrong, but I thought it was a memorandum disposition, which are not precedential. And unless the court thought it was persuasive and wanted to adopt it, we normally won't pay attention to memorandum disposition that doesn't bind us. I'm sorry, Your Honor. I do have that case in front of me, United States v. Adam Gardenhire, and I don't see it as a memorandum decision. Now, I might be wrong. It does not appear to be a memorandum decision. You might be right. There was some memorandum disposition that was relied upon. But if that's published, we'll take care of it. You know, Your Honor, you asked me a question, and you asked me if I'd ever found a case that had a hypothetical in it. And before I came over here, I started looking at that issue. And I found a United States v. DeLange. It was argued and submitted and decided, 1995, 66F3D, 1073. And in that case, a hypothetical was vacated and remanded. The district court could not rely on dangerousness of defendant's conduct in firing at police officers to upwardly depart the sentencing on basis of factors not taken into account by the sentencing guidelines. Okay. Thanks. There's one other point, but we've taken you way over your time. But we'll give your colleague plenty of time to respond. Thank you, Your Honor. But there was an issue raised in your briefs that you haven't addressed and that I thought was a significant problem on the sentence. And that is reliance on polygraphs from Idaho. Yes, Your Honor. The reason I'm asking you to address that, and I want the government to address it in response, is that if we were to find there was some error that required a remand on that issue, then the sentence would be vacated. It would be going back to the district court. We wouldn't necessarily have to plumb the depths of all sentencing principles that relate to hypothetical crimes. We could say something as guidance for the district court and get clarification and take it up the next time. But could you explain what you think was wrong with the reliance on the polygraph? Your Honor, I objected to the polygraph being submitted, the testimony regarding the polygraph. In United States v. Barr, that indicates, at least it indicated to me, that the court could not in a probation or supervised release hearing introduce polygraph evidence. But here, moreover, I didn't even have any polygraph. There was testimony about a polygraph, which I had no information on. The probation officer from the State of Idaho testified about a polygraph where there was information, apparently, according to her, that Mr. Pockert had indiscretions with several children ranging from 11 to 15 and even one-year-old. But there was nothing for me to cross-examiner with. When did you first learn about it? Pardon? At the sentencing hearing. So that was very problematic for me, that that would come in. And I think if there was information provided to me, and I'm not faulting Mr. Owens, I'm just saying, if information was provided to me prior to it, that I could have looked into it, that I could have at least addressed it in a reasonable fashion. Did the PSR mention the polygraph? No. Nothing? No. Did I answer your question, Judge? Yes. Was there a Fifth Amendment issue relating to the polygraph? Well, the Fifth Amendment issue is, I think, when you're disclosing something under a polygraph that is mandatory, which it was for Mr. Pockert, then he's making these statements against his self-interest, then I think it impacts his United States v. Barr's data and it impacts his Fifth Amendment rights. Okay. Well, you've gone way over your time at our specific request, so it's no problem. We'll give you two minutes for rebuttal. Thank you. You can answer the government. We'll give the government equivalent time. Thank you, Your Honor. Thank you very much. We'll turn to argument by Mr. Olmes. Is that right? Yes, Your Honor. I'll just say, although your time says 10 minutes, could you mark it 20 minutes? As you can see, we have sort of a hot panel on sentencing issues. I think the panel is interested in several issues, including the use of a hypothetical. Yes, Your Honor. The question that Judge Block raised about what the upward limit is for a variance. The point that Judge Kristen raised about the dangerousness of this person and whether that justifies what was done, and also the issue I've raised about the use of the polygraph. Well, Your Honors, with regard to the use of the hypothetical, first I think it's important to point out that this was done in the context of the courts considering the 3553 factors. So this was just part of the- But he clearly relied upon it. I mean, he really used the hypothetical. Let's get right to it. It seems to me that if, separate apart from whether you can legally use a hypothetical, it seems to me that he did this incorrectly in this situation. But let me see whether you can agree with me on that. He started out with a 38 level based upon second-degree murder under 1111A. But as I read the law here, the right statute is 1113, and he just- There's an attempted murder guideline. He didn't use that. He used the murder guideline, and then he reduced it by three points for the attempt. But in this situation, as I read the law, there is a specific guideline that covers attempted murder that would bring this way down to a level 27. Am I wrong about that? I'm not contesting the court's analysis of that guideline. I think, though, that the judge was making a rhetorical point about the seriousness. This is my perspective on the sentencing hearing. Because this was not something- It seems that he did use the hypothetical as a cross-check to come to his 144 months. If, for argument's sake, the hypothetical was incorrectly calculated and it would have come to a lower range, that could have impacted his conclusion, I suspect, right? Otherwise, why did he even bother to use the hypothetical? I think he bothered to use it because he was making a rhetorical point to the defendant that I have other- The court made reference to the fact that it felt that it had other grounds to depart the court. But it's just wrong. The hypothetical for attempted murder comes out to 97, 92 to 115 months, as I calculated. But he didn't tie his sentence to a guideline calculation based on the murder. He just referenced it as something that- If, in fact, he referenced it correctly, if I'm correct, and it should have been like 92 to 115 months, are you telling me that he would have still come out with the same 144 months and would have made no difference at all? How do we know that? Well, I don't believe that his 144-month sentence was tied to a different guideline calculation. I think it was tied to his- He used the hypothetical as a cross-check to come out to the same number. Well, that's the court's impression. I don't know that it's that clear from the record. To me, my impression was that he was saying to the defendant, look at what your conduct was taking you toward. I believe you had mortal intentions. This is what you would have been facing, possibly. I'm not going to sentence you in accordance with that type of penalty. I'm going to come- My sentence is going to be much less than that. But I think that ultimately the court's sentence was driven by the court's evaluation of the defendant's conduct in this case, which was this escalating- You see, if he did not use a hypothetical at all, then we'd be dealing with this simple question, not so simple, I guess, but at least we have a clear-cut issue here. How high up can you go to justify a significant upward variance here? But the fact that he commingled this with the cross-check is troublesome to me, at least, especially since he got it wrong, in my opinion. And the proper calculation would have been 92 to 115 months, according to my calculation, if he used the attempted murder guideline. And what he would have said, I don't know. But I just wonder, if he did not use a hypothetical at all, do you think 144 months would still be reasonable? Well, I do. I recommended a 120-month sentence, but the court exercised its own independent judgment in looking at the 3553 factors. I'd like you to play with me a little bit. If you assume that the hypothetical for attempted murder would give a range of 92 to 115 months, then the sentence of 144 is way higher than the outer limit of what attempted murder would have been under the guidelines. How do you support and justify that? Well, there are different forms of attempted second-degree murder. This was, I believe, the court, as Judge Kuczynski did in the Spangle case, came to a conclusion as to what the defendant's motives were. In that case, the defendant's motives were to menace a probation officer. In this case, I think the court concluded that the defendant was... So for a crime he was not convicted of, you can justify an upward variance significantly higher than if he was charged and convicted of attempted murder. You think that's okay? I believe, in this instance, given the facts and circumstances of this case, it is okay and was an appropriate sentence because... Before we go over that too quickly, I want to make sure I have the facts and circumstances correctly. Forgive me for interrupting. But I think the facts and circumstances include that this man was found with a rape kit and a bomb that had been partially... At one point, they thought fully operational. At one point, then disarmed. And he'd done internet research to find the resident's location for his probation officer. And I think that the transcript shows that the judge was mindful of all of that. Are those the facts and circumstances that you mean? Yes, Your Honor. Okay. So I don't mean to interrupt, but I just want to make sure that we're on the same page about what we're talking about because you're arguing that the judge was free to consider that. I think that wasn't a charged crime. There was no attempted second-degree murder charged, right? Correct, Your Honor. Okay. I also have a question related to that. I may not have read the transcript carefully enough, but when I read it, I sort of had the impression that the judge was musing about... You'd gone forward and the bomb went off. And, you know, someone was injured or might have been injured. Things could have been a lot worse for you. And in a way, he was putting attempted murder out there as a bookmark. You know, what could have happened if this had gone further? Is there anything to that idea that that's what he was doing? That was my impression, Your Honor, that he was making a rhetorical point to the defendant, but he was not basing his sentence on that. And I think that the court was actually very careful and clear about what it based its sentence on and what it didn't with regard to such things as the defendant's sexual misconduct in the state of Idaho. Let me bring you back to another point. You know, I'm just one judge, so I can't decide anything alone. But if I had to decide if a judge could come up with a hypothetical crime, then I would think that a judge should be able to do that as part of the judge's discretion. However, if a judge is going to do that as a cross-check, to use Judge Block's term, it would seem to me that it might be a significant procedural error to calculate the guidelines for that hypothetical incorrectly. Picking up on what Judge Gould said, I mean, looking at his statement of reasons, he says specifically the court has hypothecated a guideline sentence for attempted murder or attempted second-degree murder. Either hypothetical calculation substantially exceeds the sentence the court has imposed here. But if, in fact, he's wrong about making that determination and the correct hypothetical, assuming that you can use a hypothetical, would be lower, which I think is the case here, then he's absolutely incorrect in making that statement in his statement of reasons. In other words, the calculation is a separate problem entirely. If he's going to engage in the hypothetical, as Judge Block says, there's a problem with a calculation. It's a two-part problem. Isn't that right? I can agree that that's correct, Your Honors. I think it's one of the reasons why we have pre-sentence reports and we have . . . those calculations are all sort of vetted through that way. I have just a slightly different problem. If you get past the calculation error that Judge Block is concerned about and that I share his concern with, I don't mean to skip over it lightly, but it seems to me that there's a tension because under 3553A the judge is allowed to consider and is required, I think, to consider the need to protect the public from further crimes by this defendant. And this particular crime involved a lot of evidence that there was a plan in place. So understanding that the judge can consider that, I'm concerned about the limits and how far can they go with a variance in this kind of circumstance where there's not a conviction. In fact, there wasn't a charge for this attempted murder plot. And my question is, is Treadwell the best authority for that limit? Treadwell is a case that says that for this variance where it approached a 65% increase, that there would be due process concerns if the underlying conduct wasn't shown by clear and convincing evidence. Is that part of what you're saying, that you think that the evidence supported that kind of a finding, or are you saying he didn't get to that range of variance? I'm saying that the evidence supported that type of finding. Was that the government's argument at sentencing? The government was arguing for an upward variance based upon the escalating criminal conduct in this case and the evidence of the intent of what this individual . . . I guess the evidence that there was an intent for him to follow through and carry out on something horrific. So you are asking for 120 months, is that right, or the government was? I was asking for 120 months because I . . . I had to balance my own sense of what I thought was . . . what I could accomplish. What is the percentage variance here? I didn't figure it out by percentage. I didn't figure that out, Your Honor. Let me interject a question here. I'm pretty sure in Treadwell that one of the things we were saying was that if a particular fact was going to cause a major, super major variance upward or increase the sentence by a lot, that fact had to be shown by clear and convincing evidence. Here, there certainly is clear and convincing evidence that he was involved in a lot of criminal conduct and probably had bad motives, but it's not entirely clear what he was up to, to me. I'm trying to find a simpler line on the case, if I can. Let me ask you to address the polygraph issue and the Fifth Amendment issue. If you would, please. The Fifth Amendment issue emerges if the defendant has not been granted any form of immunity during the polygraph process and then is required to give the polygraph in order to comply with the conditions of their supervision. That's where the Fifth Amendment issue emerges. Here, do we know whether or not there was a Fifth Amendment violation or does it depend on facts that the record doesn't show that would require us to vacate the sentence on that ground and send it back for further finding? There's not enough information on the record to make that determination because we can make assumptions or guesses about it, but we don't know with certainty what the Idaho provisions were with regard to whether he had been granted any form of immunity or anything of that nature as part of the procedures that he went through in order to take the polygraphs. What I'm thinking, if I could just address this informally, if we have to write an opinion, it won't be this informal, but it seems like part of the problem here on the hypothetical that we started off talking about is the judge really wasn't very clear. We can't tell for certain what did he base his sentence on whereas your position is clearly that he based it on the guidelines for what was charged and then used his discretion to go up because of the dangerousness and the hypothetical and the other conduct. Your colleague thinks he just based it on the hypothetical and went too far. As Judge Blocks, it's not even clear that he would need to use a hypothetical to justify any sentence. What would be wrong practically with vacating the sentence and remanding on the polygraph issue, saying that we think the court needs to make findings about whether the statements on the polygraph were compelled and we don't really know the answer to that and let him make findings on that. Then in the course of that, of course, if the sentence is vacated, it's going to have to be resentenced. We could ask the judge to clarify what he's basing his sentence on when he resentences because if he's not really basing it on a hypothetical, we don't have to cross that bridge of deciding if that's permissible or if he's basing it on a hypothetical. It's permissible. We don't have to decide if it's reversible error, if there's significant procedural error in calculating the hypothetical guideline. Well, I think that with regard to the polygraph, it's a little different here than it was in the Bear case because I brought it up in response. It was really more of a rebuttal to an impression that the defense was, I thought, trying to generate unfairly through statements that they were making that were not subjected to any cross-examination. They were a video that was presented that asked the court to be dismissive of the underlying sexual convictions for sexual assault or the sexual offenses. That was the motive behind looking at that. The judge then said, when he began to present his sentence, that that was not something that he was going to consider, that he was going to leave that up to Idaho. The Bar case says that it required resentencing because the court considered it, because it was used by the court. It was relevant to the underlying possession of child pornography case. The government brought it up affirmatively, brought in an additional witness through the defendant's mother in that case to testify about statements the defendant had made. It was front and center and relied upon by the sentencing court. I think in this case, the panel can do what it believes is appropriate in this case, but there are distinguishing factors in this case. . I recognize why you brought it out because he had put it in a video saying something different. If I had to do over again, I might have thought much more carefully about that process, but I don't know that . . . Right. If the judge had to do over again, which he may. I'm sure he would be more precise about his hypothetical. Okay. Unless other panels members have something to say? . Probation for rape kid. I've never heard of a rate care. I've heard of survival kits never heard of a rate kitten tell this point time. I don't know what significance those apparently they played a large significance. But having a bomb or an incomplete bomb or a .
judges: Block, Gould, Christen